UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD J. STEINER and DAX LABS, LLC, | : | |
|     Plaintiffs | : | |
| | : | CASE NO. 3:09 CV 1976 (DJS) |
| V. | : | |
| | : | |
| LEWMAR, INC. and LEWMAR LTD., | : | |
|     Defendants | : | |

## RULING ON THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The Plaintiffs, Donald J. Steiner ("Steiner") and Dax Labs, LLC ("Dax"), bring this action against the Defendants, Lewmar, Inc. and Lewmar LTD (collectively, "Lewmar") raising claims of (1) trademark infringement in violation of the federal Lanham [Trademark] Act ; (2) unfair competition in violation of the Lanham Act; (3) false description in violation of the Lanham Act; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) conspiracy/aiding and abetting with regard to Lewmar LTD's breach of its duties and obligations to Steiner; and (7) unfair trade practices in violation of the Connecticut Unfair Trade Practices Act.  The claims relate to an agreement between the parties involving Steiner's patented "OneTouch" winch handle design.  Lewmar has counterclaimed for (1) a declaration of trademark noninfringement; (2) a declaration finding no unfair competition; (3) a declaration finding no false description; (4) a declaration finding no conspiracy/aiding and abetting; (5) a declaration finding no unfair trade practices; (6) a declaration of patent invalidity; (7) a declaration of patent noninfringement; (8) a declaration finding no breach of contract; (9) a declaration finding no breach of the implied covenant of good faith and fair dealing; and (10) a declaration of patent misuse .

1

Now pending before the court are Lewmar's summary judgment motions as to (1) Lewmar's counterclaim for a declaration of patent noninfringement (doc. nos. 73, 101)[1], and (2) Plaintiffs' claim of a breach of the implied covenant of good faith and fair dealing. (Doc. No. 75). For the reasons set forth below, the motions for summary judgment are **DENIED**.

## FACTS

Steiner, who is a resident of the State of Connecticut, is the inventor of the OneTouch winch handle (the "OneTouch"), embodied in U.S. Patent No. 7,114,705. The OneTouch is a sailboat winch handle that more easily attaches and detaches from a standard winch. A winch is a spool-like drum affixed to a sailboat that permits ropes connected to sails to be reeled in or released, permitting the sailboat to navigate accordingly. A winch handle is a device consisting generally of a handle, crank arm, and socket that attaches to the winch. The winch handle, when rotated upon the winch, allows for the taking back of the rope line. To release the line from the winch, it is beneficial to remove the winch handle from the winch; this allows the line to be efficiently lifted off of the winch. Traditional winch handles primarily require the use of two hands in order to release the handle from the winch. The OneTouch design, by way of a "grip lever," allows for a one-handed release of the handle from the winch. According to Steiner, "being able to release the [winch] handle is fundamentally important in sailing. The difference with my approach was a one-hand operation." (Doc. No. 117-4, at 25, p. 101, lines 22-25).

Lewmar designs, manufactures, and distributes marine products, including winch handles. Lewmar Inc.'s headquarters are in Connecticut; Lewmar Ltd.'s headquarters are in the United Kingdom. On February 24, 2005, an agreement was made between Steiner and Lewmar which granted Lewmar "the exclusive right to manufacture, have manufactured, market, and sell

---

[1] Document 73 seeks the same summary judgment as Document 101, but, unlike Document 101, Document 73 is based on a claim of waiver.

[the OneTouch] . . . [throughout the world] . . . during the Term [of the Agreement]." (Doc. No. 117-8, at 7, ¶ 2.1).   Among other things, Lewmar agreed to provide Steiner a royalty from the sales of the OneTouch.  Lewmar further agreed to "use commercially reasonable efforts to maintain sufficient annual sales revenues to provide at least the minimum annual royalty payment to Mr. Steiner specified[2] [in the Agreement]." (*Id*. at 8, ¶ 3.3).   Lewmar was required to ensure that all OneTouch handles manufactured by or for it and sold by it "conform to Mr. Steiner's reasonable standards of quality, design and specifications . . . ." (*Id.* at 10, ¶ 8.1(a)).  The agreement further required Lewmar to "keep complete and proper records of all [OneTouch handles] sold under this Agreement . . . containing all of the particulars necessary to ascertain the royalties due Mr. Steiner . . . ." (*Id.*, ¶ 9.1) Accurate reports of royalties due were to be delivered to Steiner within a prescribed time.  Lewmar was required to "exercise diligent and reasonable efforts at its expense to introduce, promote the sale and use of, obtain orders for, distribute and sell [the OneTouch] [throughout the world] and give adequate, efficient and prompt attention and service to customers and consumers."  (*Id.* at 11, ¶ 11.1).

Both Steiner and Lewmar "agree[d] to inform each other of any infringement of [the OneTouch patent or trademark] of which they become aware"; "[i]f the parties agree that Lewmar is better situated to take actions or procedures to halt infringement, Lewmar may, in its own discretion, do so at its own expense." (*Id*. at 9, ¶¶ 5.1, 5.2).

According to Steiner, Lewmar "failed to produce even a prototype of the OneTouch handle until April of 2006, some 1.4 years after the Agreement was signed." (Doc. No. 117-6, at

---

[2] "Said minimum annual royalty shall be 10,000 GBP [British Pounds] per year for years 1 through 10, and 7,000 GBP for years 11 through to the end of the agreement. Such minimum annual payments to start as of January 1, 2006." (Doc. # 117-8, at 8, ¶ 3.3).

3

6, ¶ 17).[3]  Lewmar also failed, among other things, "to provide [Steiner] with the contractually-required reports on sales of the OneTouch handle" and "failed to make the required quarterly royalty payments."  (Id., ¶ 18). On April 18, 2006, Steiner advised Lewmar that the prototype it had provided to him was defective in various respects and that he "would not buy the prototype handle if it made it into production because of its manufacturing defects." (*Id.* at 7, ¶ 20).

On May 9, 2006, Steiner notified Lewmar that he intended to cancel the Agreement on the basis of Lewmar's non-performance.  Instead, on August 6, 2006, the parties amended their February 24, 2005 Agreement.  "Simply stated, the intent [of the amended Agreement] is that Lewmar has the exclusive right to produce the [OneTouch] comprised, in the majority, of metal, and Mr. Steiner has the exclusive rights to produce the [OneTouch] in any other material(s) as long as it is not, in the majority, metal." (Doc. No. 117-8, at 15, ¶ 2.1). After the parties amended their Agreement, Steiner founded Dax Labs, LLC "to manufacture, primarily in composite, non-metallic materials, the OneTouch sailboat winch handle . . . ." (Doc. # 117-6, at 1, ¶ 3).

Subsequent to the execution of the amended Agreement, Lewmar manufactured a winch handle that was distributed under the mark "Lite Touch."  On November 10, 2008, Steiner sent an email to Lewmar, asking for "an elaboration in regard to the design and locking mechanism used on Lewmar's 'Lite Touch' winch handle." (Doc. No. 73-2, at 2).  His concern was "that there may be a conflict or infringement in regard to [the parties'] existing agreement." (*Id.*)  On December 1, 2008, Lewmar's counsel responded to Steiner's email, stating that "[w]e . . . are confident that the Lewmar 'Lite Touch' winch handle . . . does not infringe any claim of the '705 patent [i.e., the OneTouch]." (Doc. No. 73-3, at 2).

---

[3] The Court notes that for purposes of a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

According to Steiner, the Lite Touch handle, which he characterizes as a "non-metallic knockoff of the OneTouch handle," was priced approximately 40% lower than the plaintiff's non-metallic OneTouch handle "[i]n furtherance of [Lewmar's] effort to deprive plaintiff Steiner of the benefit of his bargain." (Doc. No. 117-7, at 9-10, ¶¶ 25, 27). Steiner further asserts that the values of both Dax Labs, LLC and the non-metallic OneTouch handle deteriorated substantially once Lewmar began marketing and selling the Lite Touch handle.  An August 12, 2008 Lewmar email concerning proposed pricing for the Lite Touch handle contains the following sentence: "Specifically with the Lite Touch we have the opportunity to kill off the Dax handle and wipe out a number of low cost/low performance handles with a single sweep if we hit the right price point at launch and hit the market hard."  (Doc. No. 119-2, at 2).

In a November 13, 2009 email discussing a product called the "Holmatro Extreme winch handle," a Lewmar official stated that "[o]n the face of it this looks to be in breach of our patent, however they would have taken there [sic] time to look at our patent and try and get round it. They may have got round the patent by the grab bar mechanism only going half the length of the handles top surface which they are very careful to state. We got round the Steiner patent for the Lite touch in the same manner."  (Doc. No. 117-11, at 22).

On December 4, 2009, Steiner initiated this action. He claimed, *inter alia,* breach of the implied covenant of good faith and fair dealing.  In its Answer, Lewmar included a number of counterclaims, including a counterclaim seeking a declaration of patent noninfringement. On September 6, 2011, the Court issued an Order allowing the Plaintiffs to amend their Complaint by adding a patent infringement claim if they wished to do so. Any such amendment was required to be filed by October 1, 2011. The Plaintiffs did not amend their Complaint by adding a patent infringement claim.  Defendant Lewmar has filed motions seeking summary judgment

5

on its claim of patent noninfringement and on the Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir. 1981).

A dispute concerning a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Central School District*, 963 F.2d 520, 523 (2d Cir. 1992) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all reasonable inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F. 2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id*.

## DISCUSSION

### A. Patent Noninfringement

One of Lewmar's counterclaims seeks a declaration of patent noninfringement. The purpose of the Declaratory Judgment Act in patent cases "is to provide the allegedly infringing

6

party relief from the uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d. 953, 956 (Fed. Cir. 1987). A declaratory judgment action, like all other federal court actions, must satisfy the case or controversy requirement of Article III of the U.S. Constitution.  "A party claiming declaratory judgment jurisdiction has the burden of showing that the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Streck, Inc., v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1281-82 (Fed. Cir. 2012) (internal quotation marks omitted). The court's jurisdiction "must exist at all stages of review, not merely at the time the complaint [was] filed." *Id.* at 1282 (internal quotation marks omitted).

In order for a declaratory judgment action to satisfy the case or controversy requirement of the U.S. Constitution, "the dispute [must] be definite and concrete, touching the legal relations of parties having adverse legal interests; and [must] be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted).  "[C]onsistent with *MedImmune*, a counter-claimant must show a continuing case or controversy with respect to withdrawn or otherwise unasserted claims."  *Streck*, 665 F.3d at 1283.

Rule 13 of the Federal Rules of Civil Procedure provides in part that:

> A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13 (a). The Plaintiffs acknowledge that because Lewmar filed a patent noninfringement counterclaim, "an affirmative patent infringement claim [by the Plaintiffs] . . . [became] a compulsory counterclaim under applicable patent law." (Doc. # 145, at 2). The Plaintiffs further acknowledge that "[a]s a matter of law, the plaintiffs cannot preserve a patent infringement claim for future action; it is a compulsory counter-claim in this action." (*Id.* at 8). Since the Plaintiffs have made a conscious decision not to pursue a patent infringement claim against Lewmar in this action and cannot pursue such a claim in any future action, the Court concludes that the Plaintiffs have waived any claim they may have had that Lewmar's Lite Touch winch handle infringed their patent relating to the OneTouch winch handle.

With regard to a question of possible patent infringement, "[a] useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff[.]" *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). Because the Plaintiffs have effectively waived any potential patent infringement claim, the answer to this question is that they have no cause of action sounding in patent infringement against Lewmar. Keeping in mind the purpose of the Declaratory Judgment Act in patent cases, i.e., "to provide the allegedly infringing party relief from the uncertainty and delay regarding its legal rights," *Releasomers,* 824 F.2d. at 956, the Court concludes that the case or controversy requirement is not satisfied as to Lewmar's counterclaim seeking a declaration of patent noninfringement. Consequently the Court lacks declaratory judgment jurisdiction over that counterclaim.

Lewmar contends that this Court "retains jurisdiction on infringement because it is an element of two of Lemar's other counterclaims," i.e., a declaration finding no breach of the implied covenant of good faith and fair dealing and a declaration of patent misuse. (Doc. # 146,

at 1-2). "It is well-established that, in patent cases, the existence of a case or controversy must be evaluated on a claim-by-claim basis." *Streck*, 665 F.3d at 1281. (internal quotation marks omitted). Those other two counterclaims are not before the Court for purposes of the pending summary judgment motions. The Court has determined that the counterclaim of patent noninfringement, which was raised as a separate and distinct claim and is included in the pending motions, does not satisfy the case or controversy requirement.

The Court also notes that a claimed breach of the implied covenant of good faith and fair dealing "must be tied to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty." *Landry v. Spitz*, 102 Conn. App. 34, 47 (2007). The Plaintiffs' Complaint contains a number of specific allegations of "material breaches" of the parties' Agreement, none of which refers to any possible infringement by Lewmar of the OneTouch patent. (Doc. # 1, ¶¶ 15-17).

By way of its counterclaims Lewmar also seeks a declaration of patent misuse. In certain cases courts have recognized a "patent misuse" defense to a patent infringement claim. The rationale for that defense was articulated by the Supreme Court when it recognized "an important public interest [that] would be prejudiced" by granting injunctive relief to the patent holder who was claiming patent infringement but was misusing the patent. *Mercoid Corp. v. Mid-Continent Investment Co.*, 320 U.S. 661, 670 (1944) (internal quotation marks omitted). As noted above, the patent misuse counterclaim is not before the Court for purposes of the pending summary judgment motions. However, since the Plaintiffs have effectively waived any potential patent infringement claim, it would appear that the rationale for a patent misuse defense does not apply in this case.

### B.  Implied Covenant of Good Faith and Fair Dealing

Lewmar has also moved for summary judgment as to the Plaintiffs' claim of a breach of the implied covenant of good faith and fair dealing.  "It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Hoskins v. Titan Value Equities Group, Inc.*, 252 Conn. 789, 793 (2000). That implied duty requires "that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Insurance Co.*, 269 Conn. 424, 432 (2004) (internal quotation marks omitted).  "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *Hoskins*, 252 Conn. at 793 (internal quotation marks omitted).

"To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Alexandru v. Strong,* 81 Conn. App. 68, 80-81 (2004).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . .  Bad faith means more than mere negligence; it involves a dishonest purpose." *Habetz v. Condon,* 224 Conn. 231, 237 (1992) (internal quotation marks and citation omitted).

The Plaintiffs have demonstrated that there are material facts genuinely in dispute as to whether Lewmar took actions in bad faith that impeded the Plaintiffs' right to receive benefits under the parties' contract. The Plaintiffs have alleged a number of material breaches of the

10

parties' Agreement, (doc. # 1, ¶¶ 15-17), and have come forward with evidence in support of those allegations. See, e.g., doc. # 117-6, ¶¶ 18, 19, 26-28. The Plaintiffs have also produced internal Lewmar emails that could support a finding of bad faith as to certain actions alleged to have been taken by Lewmar.  An August 12, 2008 Lewmar email concerning proposed pricing for the Lite Touch handle contains the following sentence: "Specifically with the Lite Touch we have the opportunity to kill off the Dax handle and wipe out a number of low cost/low performance handles with a single sweep if we hit the right price point at launch and hit the market hard."  (Doc. No. 119-2, at 2).  In a November 13, 2009 email discussing a product called the "Holmatro Extreme winch handle," a Lewmar official stated that "[o]n the face of it this looks to be in breach of our patent, however they would have taken there [sic] time to look at our patent and try and get round it. They may have got round the patent by the grab bar mechanism only going half the length of the handles top surface which they are very careful to state. We got round the Steiner patent for the Lite touch in the same manner."  (Doc. No. 117-11, at 22).

    Because there are material facts genuinely in dispute as to the Plaintiffs' claim of a breach of the implied covenant of good faith and fair dealing, that claim cannot be resolved on the basis of a motion for summary judgment and Lewmar's motion for summary judgment is denied as to that claim.

## **CONCLUSION**

For the reasons stated herein, Lewmar's motions for summary judgment as to Lewmar's patent noninfringement counterclaim  (**doc. nos. 73, 101**) are **DENIED** and that counterclaim is DISMISSED on the basis of lack of declaratory judgment jurisdiction.  Lewmar's motion for summary judgment as to the Plaintiffs' claim of a breach of the implied covenant of good faith and fair dealing (**doc. no. 75**) is **DENIED**.

**SO ORDERED** this    22nd    day of October,  2013.


_____/s/ DJS_____
**DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE**